UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| DAMON L. CAMPBELL, | Case No.: 2:21-cv-00912-APG-BNW |
| Plaintiff | **Order Granting Defendants' Motion for Summary Judgment and Denying Plaintiff's Motion for Summary Judgment** |
| v. | |
| DEAN WILLETT, et al., | [ECF Nos. 40, 44] |
| Defendants | |

Plaintiff Damon Campbell sues Nevada Department of Corrections (NDOC) employees Dean Willett and Sean Brooks under 42 U.S.C. § 1983 for an alleged due process violation related to a disciplinary hearing against him while he was housed at Southern Desert Correctional Center.[1]  Campbell contends that he was entitled to certain due process protections related to this hearing, but Willett and Brooks refused to obtain and review videos, would not give him a copy of staff reports, and denied him a witness he wanted to call in his defense.

Both sides move for summary judgment.  The parties are familiar with the facts, so I recite them here only as necessary to resolve the motions.  I grant the defendants' motion and deny Campbell's motion because Willett and Brooks are entitled to qualified immunity.

**I. ANALYSIS**

To establish liability under 42 U.S.C. § 1983, a plaintiff must show the deprivation of a right secured by the Constitution and laws of the United States and must show that the deprivation was committed by a person acting under color of state law. *Broam v. Bogan*, 320

---

[1] Campbell also sued Warden Hutchings, but I dismissed Hutchings at screening. ECF No. 7 at 9-10.

F.3d 1023, 1028 (9th Cir. 2003). The defendants do not contest that they acted under color of law. Thus, the dispute centers on whether they violated Campbell's constitutional rights.

The parties also dispute whether the defendants are entitled to qualified immunity. To allay the "risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties," government officials performing discretionary functions may be entitled to qualified immunity for claims made under § 1983. *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). I determine whether the defendants are entitled to qualified immunity by asking (1) whether the facts viewed in the light most favorable to the plaintiff establish that the defendants violated a constitutional right and (2) "if so, whether that right was clearly established at the time of the event." *Rosenbaum v. Washoe County*, 663 F.3d 1071, 1075 (9th Cir. 2011). I may address these two prongs in any order and, depending on the conclusion I reach, I need not address both prongs. *Pearson v. Callahan*, 555 U.S. 223, 236-37 (2009).

A right is clearly established if "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Wilkins v. City of Oakland*, 350 F.3d 949, 954 (9th Cir. 2003) (emphasis omitted) (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)). To show the right at issue is clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." *Kisela v. Hughes*, —— U.S. ——, 138 S. Ct. 1148, 1152 (2018) (per curiam) (quotation omitted). I evaluate whether a right is clearly established "in light of the specific context of the case, not as a broad general proposition." *Saucier*, 533 U.S. at 201. An officer will be entitled to qualified immunity even if he was mistaken in his belief that his conduct was lawful, so long as that belief was reasonable. *Wilkins*, 350 F.3d at 955. "The

plaintiff bears the burden of proof that the right allegedly violated was clearly established at the time of the alleged misconduct." *Shooter v. Arizona*, 4 F.4th 955, 961 (9th Cir. 2021) (quotation omitted).

To establish a due process claim, Campbell must show the existence of a constitutionally protected liberty or property interest. *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998). "Typically, administrative segregation in and of itself does not implicate a protected liberty interest." *Serrano v. Francis*, 345 F.3d 1071, 1078 (9th Cir. 2003) (gathering cases). That is because "[d]iscipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law." *Sandin v. Conner*, 515 U.S. 472, 485 (1995). As a result, "it would be difficult (we do not say impossible) to make disciplinary segregation sufficiently more restrictive than the conditions of the general population . . . to count as an atypical and significant deprivation of liberty." *Serrano*, 345 F.3d at 1078 (quoting *Wagner v. Hanks*, 128 F.3d 1173, 1174 (7th Cir. 1997)).

However, a prisoner has a liberty interest in invoking certain procedural protections when confinement "imposes an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* (quotation omitted). Courts generally consider three factors in a "case by case, fact by fact" analysis to determine whether an inmate has a liberty interest in avoiding disciplinary segregation:

> (1) whether the challenged condition mirrored those conditions imposed upon inmates in administrative segregation and protective custody, and thus comported with the prison's discretionary authority; (2) the duration of the condition, and the degree of restraint imposed; and (3) whether the state's action will invariably affect the duration of the prisoner's sentence.

*Serrano*, 345 F.3d at 1078 (quotation omitted).

At the end of his disciplinary hearing, Campbell was found guilty of assault. ECF No. 40-4. He was sentenced to 150 days of disciplinary segregation, referral for a loss of 60 days of statutory good time credits, loss of canteen privileges for 90 days, and a transfer to another institution. *Id.* at 4. At screening, I dismissed portions of Campbell's due process claim based on loss of canteen privileges for 90 days, loss of good time credits, and the failure to advise him of his right to remain silent. ECF No. 7 at 6-7. However, I allowed his due process claim to proceed based on allegations that the conditions in disciplinary segregation could possibly constitute a significant and atypical hardship. *Id.* at 7.

Campbell states that while in disciplinary segregation for 150 days, he was locked in his cell for 24 hours a day except for four days per week when he was given the opportunity to go outside.[2] ECF No. 43 at 19. When he was outside, he was in a 10 x 10 foot area where he could not interact with other inmates. *Id.* He was permitted to shower four times a week instead of daily like general population inmates. *Id.* He could not interact directly with other inmates like he could when in the general population. *Id.* He was not allowed the same phone privileges as the general population. *Id.* He had no tier time, was unable to physically go to the law library, and could not attend classes or work. *Id.* at 20. Any time he left his cell, he was restrained with his hands behind his back. *Id.* He was then transferred to another facility that made it more difficult for friends and family to visit.[3] *Id.* at 19-20.

---

[2] Campbell states that he was in disciplinary segregation for 239 days. ECF No. 43 at 20. However, Campbell's amended complaint challenged only the 150-day sentence and did not include a claim related to being held in segregation longer than the 150 days to which he was sentenced. *See* ECF No. 6 at 9-10. Moreover, as was explained to Campbell in response to a grievance, the time spent in segregation after 150 days was no longer disciplinary. Rather, he was in administrative segregation due to safety concerns pending his transfer to another prison. ECF Nos. 43-2 at 46; 45-1 at 2.

[3] The defendants do not dispute Campbell's description of the conditions in disciplinary segregation or how those conditions differ from the general population. They do not offer

4

Campbell does not point to clearly established law that subjecting him to these conditions for 150 days constituted a significant and atypical hardship to which due process protections would attach. Supreme Court and Ninth Circuit case law suggest that disciplinary segregation for 30 days does not implicate a liberty interest, while 27 months does. *Compare Sandin*, 515 U.S. at 486-87 (holding that placement in solitary confinement for 30 days did not present atypical and significant hardship), *with Wilkinson v. Austin*, 545 U.S. 209, 223-24 (2005) (holding inmate had a liberty interest in avoiding indefinite segregation reviewed only annually); *Brown v. Or. Dep't of Corr.*, 751 F.3d 983, 988 (9th Cir. 2014) (holding that solitary confinement for 27 months "without meaningful review" created a liberty interest). But Campbell points to no case where 150 days of disciplinary segregation with similar conditions was found to trigger due process protections.[4] I therefore grant the defendants' motion and deny

---

evidence of how disciplinary segregation differs from other discretionary forms of segregation in the prison. *See Brown v. Or. Dep't of Corr.*, 751 F.3d 983, 988 (9th Cir. 2014) (noting that the Supreme Court and the Ninth Circuit "have not clearly held that conditions in the general population, as opposed to those in other forms of administrative segregation or protective custody, form the appropriate baseline comparator").

[4] To the extent the loss of good time credits is a factor to consider in this analysis, Campbell does not explain how his sentence could be extended by a loss of good time credits when he is serving a life sentence. *See* ECF Nos. 40-12 at 2 (showing Campbell is serving a life sentence and owed 36,159 days (99 years) of incarceration); 45-1 at 2 (showing Campbell is serving "Life for Murder 1st Degree"); *Davis v. Small*, 595 F. App'x 689, 690 n.2 (9th Cir. 2014) (stating that "forfeited good-time credits are not relevant" because the defendant was serving "four consecutive life-without-parole sentences" and thus had "no possibility of being released from prison"); *Greenberg v. Walsh*, No. 3:14-CV-00058-RCJ-VPC, 2015 WL 1508697, at *5 (D. Nev. Mar. 31, 2015), *aff'd*, 678 F. App'x 581 (9th Cir. 2017) (stating that because the plaintiff "is serving a life sentence, loss of good-time credits has not extended his sentence").

Moreover, it does not appear that NDOC's director accepted the recommendation that Campbell lose good time credits for this disciplinary infraction. *See* ECF Nos. 40-11 at 2-3 (stating that staff may refer inmates who are found guilty of a major violation for loss of good time credits, but the final decision is made by NDOC's Director/Deputy Director); ECF No. 40-12 at 18-19 (Campbell's credit history showing no loss of good time credits in 2020 for a disciplinary infraction). Campbell relies on a referral report to suggest that he was in fact docked the good time credits. ECF No. 43-2 at 38. But the referral report appears to reflect referrals and not the final action taken because although multiple referrals are listed, only one resulted in the

5

Campbell's motion because Willett and Brooks are entitled to qualified immunity as a matter of law. *See Chappell v. Mandeville*, 706 F.3d 1052, 1065 (9th Cir. 2013) (holding the defendants were entitled to qualified immunity because "there was no case law holding that contraband watch, or any similar regime, is an atypical and significant hardship, and the atypical and significant hardship test is so fact-specific" (internal quotation marks omitted)); *Mitchell v. Nevada ex rel. Nev. Dep't of Corr.*, No. 2:17-cv-00986-JAD-BNW, 2020 WL 2296894, at *6-7 (D. Nev. May 7, 2020) (holding that the defendants were entitled to qualified immunity because there was no clearly established law that "a 180-day sanction to solitary confinement violates an inmate's due-process rights").

## II. CONCLUSION

I THEREFORE ORDER the defendants' motion for summary judgment **(ECF No. 40) is GRANTED** and the plaintiff's motion for summary judgment **(ECF No. 44) is DENIED**. The clerk of court is instructed to enter judgment in favor of the defendants and against the plaintiff, and to close this case.

DATED this 14th day of August, 2023.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE

---

actual loss of statutory good time credits. *Compare id. with* ECF No. 40-12; *see also* ECF No. 45-2 (Brooks explaining that the only time Campbell lost statutory credits was in relation to a separate incident at another facility).